IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES HOWARD HUCKABY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 15-CV-635-GKF-FHM |
| | ) |
| TRACY McCOLLUM, Warden; | ) |
| OKLAHOMA DEPARTMENT OF | ) |
| CORRECTIONS, | ) |
| | ) |
| Respondents. | ) |

**OPINION AND ORDER**

On November 4, 2015, Petitioner, a state prisoner appearing pro se, filed a 28 U.S.C. § 2241 petition for writ of habeas corpus and a supporting brief with exhibits (Dkt. # 1). Before the Court is Respondent's motion to dismiss the petition (Dkt. # 6). Petitioner filed a response (Dkt. # 7) to the motion to dismiss, along with a supplement to the response (Dkt. # 8). Respondent's motion is premised on 28 U.S.C. § 2244(d) (imposing a one-year limitation period on habeas corpus petitions). For the reasons discussed below, the Court finds Respondent's motion to dismiss the petition as time barred shall be granted. Alternatively, the Court finds the petition fails to state a claim. The petition shall be dismissed with prejudice.

*BACKGROUND*

Petitioner challenges the administration of his sentences entered in Tulsa County District Court, Case No. CF-1987-1285. In that case, Petitioner was convicted by a jury of First Degree Murder (Count 1), Shooting With Intent to Kill (Count 2), and Conspiracy to Commit Murder (Count 3). (Dkt. # 1 at 60-62). On April 8, 1988, the trial judge sentenced Petitioner, in accordance

with the jury's recommendation, to life imprisonment on both Counts 1 and 2 and ten (10) years imprisonment on Count 3, and ordered the sentences to be served consecutively. Id. On direct appeal, the Oklahoma Court of Criminal Appeals (OCCA) affirmed Petitioner's Judgments and Sentences. Huckaby v. State, 804 P.2d 447 (Okla. Crim. App. 1990).

On or about April 15, 1988, Petitioner entered the custody of the Oklahoma Department of Corrections (ODOC) to serve his sentences. See Dkt. # 6-1. On December 17, 2008, Governor Brad Henry granted parole as to Count 1, effective December 24, 2008. See Dkt. # 1 at 47 (attached Certificate of Parole, No. 167585, bearing signature of Governor Henry). Pursuant to the Certificate of Parole, Petitioner was paroled from the life sentence entered on Count 1, to begin serving the consecutive life sentence entered on Count 2. Id. Petitioner's Consolidated Record Card demonstrates that he rebilled from Count 1 to Count 2, sentence of life imprisonment, on December 24, 2008. Id. at 57, 65; see also Dkt. # 6-3.

Petitioner claims that, in December 2008, his case manager told him he had been paroled from both life sentences to his consecutive Count 3 sentence of ten (10) years. See, e.g., Dkt. # 1 at 6, 74. He provides a copy of the ODOC Parole Docket Results for the month of September 2008, demonstrating that the Parole Board recommended "consecutive sentence (05) parole thru CS, CRF 87-1285 CT 2 to CS, CT 3," id. at 46, and a Certificate of Parole reflecting the possibility of being paroled to Count 3, see id. at 52. However, that version of the Certificate of Parole was never executed and does not bear the signature of the Governor of the State of Oklahoma. Id.

Sometime in 2009, Petitioner wrote to Jim Rabon, Administrator of Sentence Administration and Offender Records for ODOC, seeking clarification of the administration of his sentences. In a responsive letter, dated September 25, 2009, Mr. Rabon explained to Petitioner that he had "paroled

2

CF87-1285, Count 1 on December 24, 2008 and began serving the next consecutive sentence, CF87-1285, Count 2. Should you parole CF87-1285, Count 2, you would begin serving Count 3, followed by the [sentence entered in Cleveland County District Court, Case No. CF92-675]." Id. at 79.

Nothing in the record suggests that Petitioner took any further action with regard to the administration of his sentence until 2011 when he wrote a letter to Governor Mary Fallin inquiring about early parole or early release. In a letter dated April 4, 2011, the Office of Public Affairs responded to Petitioner, advising that his request should be directed to the Pardon and Parole Board. Id. at 58. Then, on August 13, 2013, after more than two (2) more years passed, Petitioner submitted a Request to Staff, claiming that he "should have been put on CRF-87-1285 Ct 3 on 12-24-08," followed by a grievance, and an appeal Administrative Review Authority (ARA) (Dkt. # 6-5). On September 12, 2013, the Director's Designee determined that the appeal to the ARA was filed improperly because the issue "has, in 2009, previously been addressed in writing." Id. at 7. Petitioner also wrote a letter to Acting Director Tracy George, Oklahoma Pardon and Parole Board, claiming that his "jacket," or his sentence administration file maintained by ODOC, contains the wrong parole certificate since he was paroled to Count 3, not Count 2. See Dkt. # 1 at 74. In a letter dated September 11, 2013, Acting Director George explained that Petitioner's "certificate is correct as stands." Id. at 76. During 2014-2015, Petitioner continued to write letters to the Pardon and Parole Board, Governor Fallin, and other state officials, attempting to correct what he believed to have been a mistake. Id. at 83, 85, 87, 89, 90.

On April 16, 2014, Petitioner sought a judicial remedy by filing a petition for writ of habeas corpus in Greer County District Court, Case No. WH-14-16. See Dkt. # 6-6. On June 27, 2014, the trial court determined that the "Petition fails on the merits" and denied relief, see Dkt. # 1 at 94. On August 11, 2014, the OCCA found "it would be beneficial for the Attorney General of the State of

3

Oklahoma to file a response to the issues raised in Petitioner's application . . . . Judge Darby, or his designated representative, shall file a response as well." Id. at 100-01. On September 17, 2014, Greer County District Judge Richard B. Darby filed "Trial Court's Response" (Dkt. # 6-8). Judge Darby provided a thorough summary of the evidence and set forth multiple reasons, including untimeliness under the doctrine of laches, supporting his conclusion that "the petition has no merit and fails." Id. at 4. Thereafter, on October 1, 2014, in Case No. HC-2014-659, the OCCA declined jurisdiction and dismissed the habeas corpus matter. (Dkt. # 1 at 98).

Petitioner then filed another petition for writ of habeas corpus in Greer County District Court, Case No. WH-15-3. See id. at 102. On June 4, 2015, Judge Darby denied the petition, finding that "Petitioner is barred from arguing the same issues for a second time in this Court." Id. at 102-03. Thereafter, the OCCA denied the petition for writ of habeas corpus filed in OCCA Case No. HC-2015-0577, finding that "Petitioner has not shown that his confinement is unlawful or that he is entitled to immediate release." Id. at 104-05.

Petitioner filed the instant federal habeas corpus petition on November 4, 2015 (Dkt. # 1). He claims that, on December 24, 2008, he was paroled from his consecutive life sentences, entered on Counts 1 and 2, to his ten (10) year sentence entered on Count 3, but that, due to a "mistake," he was rebilled to serve the life sentence on Count 2. Id. Based on that argument, Petitioner requests that he be released from custody. See id. at 8, 45. As stated above, Respondent filed a motion to dismiss, arguing that the petition is untimely. See Dkt. # 6 at 4. In the alternative, Respondent argues that Petitioner simply has not paroled Count 2. Id. at 5.

### *ANALYSIS*

4

**A. Statute of limitations**

The AEDPA, enacted April 24, 1996, established a one-year limitation period for habeas corpus petitions as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). In this case, the limitation period began to run from the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence. § 2244(d)(1)(D). Also, the limitation period was tolled or suspended during the pendency of a state application for post-conviction relief or other collateral review properly filed during the limitation period. § 2244(d)(2).

Application of the provisions of § 2244(d) leads to the conclusion that this habeas petition was filed after the expiration of the one-year limitation period. Petitioner's claim arose when the factual predicate of the claims presented could have been discovered through the exercise of due diligence. The Court finds that Petitioner learned of his claims, at the latest, when he received Jim

Rabon's letter, dated September 25, 2009, stating that Petitioner had "paroled CF87-1285, Count 1 on December 24, 2008 and began serving the next consecutive sentence, CF87-1285, Count 2. Should you parole CF87-1285, Count 2, you would begin serving Count 3, followed by the [sentence entered in Cleveland County District Court, Case No. CF92-675]." (Dkt. # 1 at 79). Thus, even if Petitioner did not receive Mr. Rabon's letter until September 30, 2009, then, under § 2244(d)(1)(D), Petitioner had one (1) year from October 1, 2009, or until October 1, 2010, to file a federal petition for writ of habeas corpus. Clearly, in the absence of a tolling event, the instant petition, filed November 25, 2015, more than five (5) years beyond the deadline, is untimely.

As set forth above, the running of the limitations period was tolled or suspended during the pendency of any post-conviction or other collateral proceeding with respect to the pertinent claim properly filed during the one-year period. 28 U.S.C. § 2244(d)(2). Petitioner's efforts to exhaust administrative and judicial remedies all occurred several years after expiration of the one-year limitations period. As a result, those efforts do not toll the limitations period. See Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir. 2006); Fisher v. Gibson, 262 F.3d 1135, 1142-43 (10th Cir. 2001).

The one-year limitations period may also be equitably tolled. To be eligible for equitable tolling, a petitioner must make a two-pronged demonstration: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way," Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir.2008) (quoting Lawrence v. Florida, 549 U.S. 327, 336 (2007)), so as to prevent him from timely filing his habeas petition. A petitioner's burden in making this demonstration is a heavy one: a court will apply equitable tolling only if a petitioner is able to "show

6

specific facts to support his claim of extraordinary circumstances and due diligence." Id. (internal quotation omitted).

In response to the motion to dismiss, Petitioner asserts that he first learned of the alleged error on September 29, 2013, "after [the Pardon and Parole Board] sent an amended certificate to have Petitioner sign for something other than what the parole board had recommended." (Dkt. # 7 at 3-4). However, nothing in the record provided by either Petitioner or Respondent contains correspondence from the Pardon and Parole Board to Petitioner dated September 29, 2013, or near the end of September 2013.[1] Instead, the record reflects that, despite allegedly being told in December 2008, that he had been paroled from both life sentences to his consecutive Count 3 sentence of ten (10) years, see, e.g., Dkt. # 1 at 74, Jim Rabon clearly and concisely explained to Petitioner, in September 2009, that on December 24, 2008, he was paroled from Count 1 to Count 2. Id. at 79. Thus, in September 2009, at the latest, Petitioner should have known the factual predicate of his claims.

Petitioner also filed a supplemental response (Dkt. # 8). In that document, Petitioner alleges for the first time that he "was recommended to parole to his count 3 sentence of 10 yrs, by the Parole Board after reading a confession from a Mr. A. E. Medlin, stating he did what the Petitioner is incarcerate[d] for." Id. While Petitioner provides no evidentiary support for his claim that someone

---

[1] The Court notes that, by letter dated September 11, 2013, the Acting Executive Director of the Pardon and Parole Board, Tracy George, informed Petitioner that "[a]fter review of your file and other information, it has been determined that your [parole] certificate is correct as stands." (Dkt. # 1 at 76).

else committed the crimes for which he was convicted,[2] he does provide the affidavit of Debra K. Hampton, an attorney, who states as follows:

> I represented Offender James Huckaby, DOC # 170289, in his effort to obtain a copy of the Governor's Report on his December 24, 2008, parole. In this regard, I made several calls to the Pardon & Parole Board Office, the Governor's Office, the Secretary of State's Office and the Oklahoma Senate. In each attempt, I was told to talk to another entity or completely ignored. I was never able to obtain this Report.

(Id. at 3). Notably lacking from the affidavit is any date reflecting when the phone calls were made. In fact, the affidavit does not provide the year of its execution.[3] Id. As a result, nothing in the record supports a finding that Petitioner diligently pursued his claims, Yang, 525 F.3d at 928, and the Court cannot find that Petitioner is entitled to equitable tolling based on averments in the supplemental response.

The record before the Court, as provided by Petitioner and Respondent, demonstrates that Petitioner failed to pursue his habeas claims diligently. In addition, he has failed to show that extraordinary circumstances stood in his way of filing his petition. Therefore, Petitioner fails to demonstrate that he is entitled to equitable tolling of the one-year limitations period. The Court concludes that Respondent's motion to dismiss should be granted and the petition should be dismissed with prejudice as time barred.

---

[2]If Petitioner were challenging the validity of his convictions under 28 U.S.C. § 2254 and claimed to be actually innocent of the crimes of which he was convicted in order to overcome the applicable statute of limitations bar, see McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013), he would be required to "present[ ] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error . . . ." Schlup v. Delo, 513 U.S. 298, 316 (1995); House v. Bell, 547 U.S. 518, 536-37 (2006).

[3]The affidavit is dated "this 15th day of December." (Dkt. # 8 at 3).

**B. Even if petition is not time barred, it fails to state a claim**

As discussed above, Petitioner requests immediate release from custody based on his argument that, but for an error on his parole certificate, he would have been paroled in 2008 to serve the ten (10) year sentence imposed for Count 3. Each of Petitioner's five habeas claims is premised on his allegation that his Fourteenth Amendment right to due process was violated when he was deprived of "his vested liberty interest" in state parole. See, e.g., Dkt. # 1 at 6. To the extent Petitioner claims that Governor Henry intended to grant parole from Count 2 to Count 3, he fails to provide any evidence supporting his claim. The only executed parole certificate in the record demonstrates that Petitioner paroled from Count 1 to Count 2. Therefore, his sentences are being properly administered.

Furthermore, Petitioner's habeas claims fail because, absent a legitimate claim of entitlement to parole, he has no liberty interest in parole under the Oklahoma parole statutes. See, e.g., Shirley v. Chestnut, 603 F.2d 805, 807 (10th Cir. 1979); Shabazz v. Keating, 977 P.2d 1089, 1093 (Okla. 1999) ("[T]here is no protectable liberty interest in an Oklahoma parole."); see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); Fristoe v. Thompson, 144 F.3d 627, 630 (10th Cir. 1998) ("The Constitution does not itself afford appellant a liberty interest in a reduced sentence."). It follows that Petitioner has no claim for violation of procedural or substantive due process based on his unsupported claim that the executed parole certificate contains a "scrivener's error." Id. ("To make out a due process claim, appellant must assert the infringement of a protected liberty interest."); Wildermuth v. Furlong, 147 F.3d 1234, 1239 (10th Cir. 1998) (rejecting a claim for a violation of substantive due process

9

because the inmate had no liberty interest in parole); see Dock v. Latimer, 729 F.2d 1287, 1290 (10th Cir. 1984) (noting that although a state may choose to implement a parole system, "it has no duty to do so"). The Tenth Circuit has emphasized that "there simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations. This is especially true with respect to the . . . administrative decision to grant parole release." Dock, 729 F.2d at 1290 (citations omitted). Here, Petitioner fails to establish a legitimate claim of entitlement to parole. As a result, he has no liberty interest in parole and no claim for violation of procedural or substantive due process.

For the reasons discussed above, even if not time barred, the petition fails to state a claim and shall be dismissed.

## Certificate of Appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Court's procedural ruling resulting in the dismissal of this action based on the statute of limitations is debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. Respondent's motion to dismiss the petition for writ of habeas corpus as barred by the statute of limitations (Dkt. # 6) is **granted**.

2. The petition for writ of habeas corpus (Dkt. # 1) is **dismissed with prejudice**.

3. In the alternative, the petition fails to state claim and, for that reason, is **dismissed**.

4. A separate judgment shall be entered in this matter.

5. A certificate of appealability is **denied**.

**DATED** this 5th day of May, 2016.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT